UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ENCORE SERIES Inc. d/b/a | : | |
| THE PHILLY POPS | : | |
|              Plaintiff | : | |
| v. | : | CIVIL ACTION NO.  2:23-cv-01421 |
| | : | |
| THE PHILADELPHIA ORCHESTRA | : | |
| and THE PHILADELPHIA | : | |
| ORCHESTRA AND KIMMEL | : | |
| CENTER, INC. | : | |
| | : | |
|              Defendants | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S FIRST AMENDED VERIFIED COMPLAINT**

           I.       **THE PARTIES AND RELATED ENTITIES**

    1.      Plaintiff, Encore Series, Inc. d/b/a The Philly POPS, ("Philly POPS") is a Pennsylvania Non-Profit Corporation with its principal place of business at 1518 Walnut Street Philadelphia, PA 19102.  Although the Philly POPS is engaged in other publicly beneficial activities, including music educational programs in conjunction with the Philadelphia School district, and large scale free holiday concerts on Memorial Day and the July 4th presented with the City of Philadelphia, the primary business activity of the Philly POPS is managing a symphony orchestra which performs a series of live indoor concerts during the concert season from September through June of the following year.

    2.      In 2001, the Philly POPS became an inaugural resident of Verizon Hall in the newly completed Kimmel Center for the Performing Arts, located on the Avenue of the Arts in Center City Philadelphia.

3.  The Kimmel Center was built with donations from Sydney Kimmel totaling about $15 million and Verizon Hall was completed with a donation of $14.5 million in cash, equipment and services donated by the Verizon Foundation.

4.  Verizon Hall is a purposely designed and built symphonic concert hall that was and continues to be an essential venue for the performance of live symphony concerts in Philadelphia because the nearby Academy of Music and other venues in Philadelphia were universally recognized as outdated, inadequate, acoustically unsuitable for the purpose of regularly preforming multiple live symphony concerts during the concert season.

5.  Defendant, the Philadelphia Orchestra is a Pennsylvania non-profit corporation with its principal place of business located at the Kimmel Center for the Performing Arts at 300 South Broad Street, Philadelphia PA 19109.  The Philadelphia Orchestra is also a symphony orchestra regularly performing live indoor concerts during the concert season at Verizon Hall since 2001 when it also became an inaugural resident of Verizon Hall.

6.  Defendant, Philadelphia Orchestra and Kimmel Center, Inc. ("POKC") is a Pennsylvania Non-Profit Corporation with its principal business at the Kimmel Center for the Preforming Arts, located at 300 South Broad Street, Philadelphia, PA  19109.

7.  POKC was organized as a Pennsylvania Corporation in 2021 to acquire and combine and manage the assets of the Philadelphia Orchestra, the Kimmel Center for the Performing Arts, including Verizon Hall, and a business activity operated by the Regional Performing Arts Center, ("RPAC"), a joint venture between the Philadelphia Orchestra and the Kimmel Center.

8.  Ticket Philadelphia is an internet ticketing facility or agency providing to ticketing and database access as week as box office services to the Philadelphia Orchestra and

the Philly POPS among other residents of the Kimmel Center Campus on the section of South Broad Street in Philadelphia known as the Avenue of the Arts.

9. In 2005 Ticket Philadelphia, was registered by the RPAC with the Commonwealth of Pennsylvania as a fictitious name. With the formation of POKC in 2021 and going forward POKC assumed the operational control of Ticket Philadelphia.

10. When POKC was formed in 2021, the President and Chief Executive Officer of the Philadelphia Orchestra, Matias Tarnopolsky, also became the President and Chief Executive Officer of POKC. The senior executives of Philadelphia Orchestra also assumed the managerial duties of POKC as well as Ticket Philadelphia.

11. On information and belief, it is averred that Matias Tarnopolsky instructed, participated in, conspired with other persons, and/or aided and abetted POKC and the Philadelphia Orchestra in the anti-competitive and tortious activities and conduct alleged in this Complaint.

12. With the acquisition of Kimmel Center for the Performing Arts including Verizon Hall and Ticket Philadelphia, Defendants POKC and the Philadelphia Orchestra acquired ownership, control of and management authority over Verizon Hall and Ticket Philadelphia both of which were essential facilities for the performance of live symphony concerts during upcoming concert seasons in the Philadelphia Metropolitan Area.

13. Concert Seasons run from September through June of each calendar year. From approximately March 2020 through approximately May 2021 Verizon Hall was closed due to restrictions on in-door gatherings during the COVID Pandemic.

14. Except during the above time-period, the Philly POPS and the Philadelphia Orchestra shared Verizon Hall for the purpose of performing multiple symphony concerts during each concert season since it opened in 2001.

15. Since about 2005 the Philly POPS and the Philadelphia Orchestra shared the ticketing and box office services provided by Ticket Philadelphia.

16. The Philly POPS and the Philadelphia Orchestra are the only symphony orchestras performing live seasonal concerts at Verizon Hall or elsewhere in the Philadelphia Metropolitan Area. Thus, the Philly POPS and the Philadelphia Orchestra were direct competitors for the performance of live symphony concerts in the Philadelphia Metropolitan Area.

17. The construction of the Kimmel Center including Verizon Hall was wholly funded by public and private grants, contributions, and donations.

## II.   NATURE OF THE ACTION

18. The Philly POPS, brings the action to obtain injunctive relief and other equitable relief including divestiture of assets by POKC, and to obtain monetary damages resulting from Defendants' violations of the antitrust laws including §7 of the Clayton Act. 15 U.S.C. §18 and §2 of the Sherman Act 15 U.S.C. §2.

19. Section 7 of the Clayton Act provides that:  No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

20. As alleged below in this Complaint, the aforesaid acquisition or combination of business assets violated §7 of the Clayton Act because it tended to substantially lessen competition between the Philadelphia Orchestra and the Philly POPS for the regular performance of live symphony concerts at Verizon Hall and in the Philadelphia Metropolitan Area and enabled the Philadelphia Orchestra and POKC to monopolize or attempt, conspire or combine to monopolize the performance of symphony concerts at Verizon Hall and elsewhere in the Philadelphia Metropolitan Area and to substantially increase ticket prices for same.

21. Section 2 of the Sherman Act, 15 U.S.C. §2, provides that every person who shall monopolize or attempt, conspire or combine to monopolize any part of trade of interstate commerce shall be deemed guilty of a felony.

22. As alleged in this Complaint below, the Philadelphia Orchestra and POKC has attempted, conspired or combined to monopolize the performance of live symphony concerts at Verizon Hall and elsewhere in the Philadelphia Metropolitan Area, and by the denial of access to Verizon Hall and/or by a series of predatory business practices described below, has been and will continue to be successful in monopolizing the aforesaid relevant product and geographic markets unless the injunctive relief requested in the Complaint is granted by the Court.

23. Under the Clayton Act, 15 U.S.C. §15(a) any person who has been injured in its business or property by reason of anything forbidden in the antitrust laws is authorized to file suit against the offender(s) for, injunctive relief including divestiture and for three-fold damages and costs of suit including reasonable attorney's fees.

24. By virtue of the foregoing violations of §7 of the Clayton Act and §2 of the Sherman Act, the Philly POPS has been substantially damaged and injured in its business and properties.

25.     In Counts 3 and 4 of this Complaint, the Philly POPS also asserts pendant state law causes of action against POKC and the Philadelphia Orchestra for: 1) tortious interference with the Philly POPS' actual and prospective ticket buyers or customers for live symphony concerts at Verizon Hall during the 2022-23 concert season and 2) unfair competition in violation of the Common Law of the Commonwealth of Pennsylvania.

### III.     JURISDICTION, VENUE, AND INTERSTATE COMMERCE

26.     This Court has jurisdiction over Plaintiffs Causes of Action under the Antitrust Laws pursuant to U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337 (commerce and antitrust regulations).  This Court has Supplemental Jurisdiction overt Plaintiffs' State Law Claims pursuant to 28 U.S.C. § 1367.

27.     Pursuant to 28 U.S.C. § 1391 and §12 of the Clayton Act, 15 U.S.C. § 22, venue would be proper in the Eastern District of Pennsylvania EDPA because the defendants regularly conduct business in this Judicial District, have their principal places of business in this Judicial District, and the unlawful and tortious actions and events alleged in this Complaint have taken place in this Judicial District

28.     The allegedly unlawful and tortious activities of the Defendants have a substantial effect on interstate trade and commerce because all parties to this civil action sell and market their products or services to residents of the Philadelphia Metropolitan area that includes residents of South-Eastern Pennsylvania, Southern New Jersey and Delaware.

29.     As discussed below, the Relevant Geographic Market affected by the allegedly unlawful conduct of the Defendants is the Philadelphia Metropolitan Area which comprises several counties in all three States.

30. Each year, thousands of residents of Southern New Jersey and Delaware travel to and from Philadelphia not only to attend live symphony concerts but also for work, medical attention, dining and entertainment and sporting events.

### IV. RELEVANT PRODUCT AND GEOGRAPHIC MARKETS

31. The line of commerce or relevant product market at issue with respect to the Philly POPS antitrust causes of action is the performance of live symphony concerts.

32. Modern Symphony Orchestras such as the Philadelphia Orchestra and the Philly POPS regularly perform both classical and popular symphony concerts and/or concerts containing a mixture of classical and popular music.

33. While the Philadelphia Orchestra has historically focused on the performance of live classical music and the Philly POPS historically focused on the performance of live popular music concerts, both orchestras have for years performed popular music by American Composers such as George Gershwin, Richard Rodgers and John Phillip Sousa. Both orchestras also devote concerts to Authors of popular music from hit Broadway Productions and successful movie productions such as "2001 a Space Odyssey" and the "Star Wars" series of movies.

34. The first concert performed at Verizon Hall by the Philadelphia Orchestra in 2001 included the music of Elton John. Similarly, Christmas Concerts performed by the Philly POPS at Verizon Hall for several years include arrangements of historically classical music and arrangements of popular Christmas music.

35. Over the past several years, the segmentation of classical and popular symphony concerts has been largely erased as symphony orchestras such as the Philadelphia Orchestra have increasingly added popular music including jazz music and theatrical production music to their concert schedules and the Philly POPS has also added arrangements of historical classical music to its concert schedule. These mixed schedules have been increasingly adopted by conductors of

symphony orchestras including Yannick Nezet Seguin, the current conductor of the Philadelphia Orchestra as well as the Metropolitan Opera in New York City and the Montreal Symphony Orchestra.

36. Shortly prior to the Philly POPS ouster from Verizon Hall, the Philadelphia Orchestra began scheduling several popular music concerts at Verizon Hall and at other outdoor venues.

37. The ticket prices for these concerts at Verizon Hall are substantially higher than comparable symphony concerts performed by the Philly POPS. For example, the Philly POPS' ticket prices for popular music concerts at Verizon Hall during the 2022-23 season ranged between $35 and $125 but the Philadelphia Orchestra's ticket prices for a similar popular symphony concert at Verizon Hall range between $50 and $150.

38. Matias Tarnopolsky, the President, and Chief Executive Officer of both the Philadelphia Orchestra and POKC, has stated publicly that the Philadelphia Orchestra should be performing the Christmas concert series at Version Hall, rather than the Philly POPS which has historically performed its Christmas Concert series of 8-10 shows at Verizon Hall.

39. The Christmas Concert Series of concerts have produced a substantial portion of the Philly POPS' total annual revenues.

40. For the foregoing reasons, the Philly POPS is the Philadelphia Orchestras only competitor in the overall market for the performance of live symphony concerts and the Philadelphia Orchestra is also the Philly POPS most likely potential competitor in what might be considered to be a submarket for the performance of live popular music concerts in the Philadelphia Metropolitan Area.

41. The relevant geographic market at issue with respect to the antitrust causes of action in this case is the Philadelphia Metropolitan Area that includes South-Eastern Pennsylvania, Southern New Jersey, and Delaware.

42. Since the opening of the Kimmel Center in 2001, the Philadelphia Orchestra and the Philly POPS have regularly marketed, advertised, and sold tickets to live symphony concerts to residents of this tri-state area that compose the Philadelphia Metropolitan Area.

43. The venue at issue in this case is Verizon Hall located within the Kimmel Center for the Performing Arts and more broadly, its cultural campus including among other venues, such as the Academy of Music and the Miller Theater all located in close proximity in Center City Philadelphia where there is ample off- street parking and multiple restaurants that are commonly patronized in connection with Concerts and other events at the Kimmel Center Campus. Verizon Hall alone in Philadelphia is equipped with choir loft that holds several hundred choral performers as is home to the largest mechanical pipe organ in an American Concert Hall.  Thus, this is the only facility or venue available to the Philly POPS in order to perform its live seasonal series concerts as well as the Philly POPS Christmas Series of concerts from which it receives a large portion of its annual revenues.

44. At the time in question, Verizon Hall was and continues to be an essential facility for the performance of live symphonic concerts. The Kimmel Center including Verizon Hall that was built because the Academy of Music was universally considered to be antiquated, inadequate or unsuitable for regular performances of live symphony concerts performed by the Philly POPS.

45. Moreover, in January 2023 when POKC wrongfully evicted the Philly POPS from Verizon Hall, the Academy of Music was occupied by both the Philadelphia Ballet and Opera

Philadelphia. Thus, there were not any dates at the Academy for the Philly POPS to reschedule its concert for the balance of the 2023

46. At the time of its wrongful eviction from Verizon Hall, the Philly POPS had already sold seasonal and individual tickets for its remaining concerts at Verizon Hall for the 2022-23 season.

V. **DEFENDANTS' ANTICOMPETITIVE AND TORTIOUS CONDUCT**

47. Since the opening of the Kimmel Center in 2001, the Philadelphia Orchestra and the Philly POPS performed symphony concerts at Verizon Hall during the September through June concert seasons each year.

48. From approximately March 2020 through August 2021, Symphonic Concerts at Verizon Hall were suspended because of the COVID Pandemic. Verizon Hall reopened for the performance of symphonic music concerts in September 2021.

49. In or about July 2021 POKC acquired the assets of and management control over the business affairs of the Philadelphia Orchestra, the Kimmel Center for the Performing Arts Cultural Campus, and Ticket Philadelphia.

50. As a consequence of the aforesaid acquisition Matias Tarnopolsky and his management team at the Philadelphia Orchestra acquired the management and control of both the Kimmel Center and Ticket Philadelphia.

51. The acquisition of assets and consolidation of business activities alleged above violated §7 of the Clayton Act in that it tended to lead to a substantial lessening of competition between the Philadelphia Orchestra and the Philly POPS for the performance of live symphonic concerts at the Kimmel Center's Verizon Hall, which at the time of and following the aforesaid asset acquisition is the only suitable and feasible facility or venue for the performance of live symphony concerts in the Philadelphia Metropolitan Area.

52. With the acquisition and control over the Kimmel Center and Ticket Philadelphia, POKC, and its Philadelphia Orchestra Management Team embarked on a series of predatory business practices directed toward the Philly POPS with the intent to eliminate competition between the Philadelphia Orchestra and the Philly POPS for the performance of live symphony concerts in the Philadelphia Metropolitan Area and to monopolize the performance of live symphony concerts in the Philadelphia Metropolitan Area.

53. Beginning in mid-2021 and continuing thereafter the Defendants, substantially and unreasonably increased Kimmel Center fees for The Philly POPS to perform live symphony concerts at Verizon Hall.

54. In advance of the 2022-23 concert season and thereafter, POKC under the management and control of the Philadelphia Orchestra, slowed down and ultimately refused entirely the production, distribution and/or sale of tickets by Ticket Philadelphia for previously scheduled concerts by the Philly POPS at Verizon Hall.

55. At the outset of the 2022-23 concert season in September 2022, POPS under the management of the Philadelphia Orchestra, proposed to the Philly POPS that it go out of business at the end of the 2022-23 concert season and transfer its assets and programing to the Philadelphia Orchestra and attempted-through a contracted public relations firm to force false internal and external messaging on the Philly POPS management designed to paint the narrative that the Philly POPS would go out of business with its programming being taken over by the Philadelphia Orchestra.

56. When POKC was informed that the Philly POPS refused to cease operations and turn over its assets and programing to the Philadelphia Orchestra, POKC substantially changed

the timeline for payment of fees for the production of concerts at Verizon Hall by the Philly POPS and escalated the fees and cost of ticket production by Ticket Philadelphia.

57.　Thereafter, POKC and the Philadelphia Orchestra sought to redirect grant moneys earmarked for the Philly POPS to the Philadelphia Orchestra and denied the Philly POPS access to the Ticket Philadelphia database and website.

58.　Ticket Philadelphia thereafter locked the Philly POPS out of ticket sales, and the distribution of already sold tickets.

59.　Since the Philly POPS' eviction from Verizon Hall, the Philadelphia Orchestra has scheduled popular music concerts at Verizon Hall.

60.　Since its eviction from Verizon Hall, the Philly POPS has attempted to negotiate with POKC regarding the conditions of its return to Verizon Hall but POKC has slow walked these negotiations with the intent and purpose of forcing the Philly POPS to cancel its concerts at Verizon Hall for the remainder of the 2022-23 concert season.

## COUNT ONE
### Violation of § 7 of the Clayton Act, 15 U.S.C. § 18

61.　Plaintiff incorporates by reference the averments of Paragraphs 1 through 60 of this Complaint as though they were realleged at length below.

62.　Defendants are corporations engaged in interstate trade and commerce in the Philadelphia Metropolitan Area.

63.　Although the Defendants are incorporated as non-profit corporations, they are subject to the jurisdiction of the Federal Trade Commission.  Non- profit organization by itself, is insufficient to divest the Federal Trade Commission of the ability to challenge mergers and asset acquisitions.  To do so, the Defendants must offer convincing evidence that the combined non-

profit entity, is unlikely to eliminate competition in the relevant product and geographic markets to the extent that it is likely to monopoly power or the power to impose a small but significant non-transitory price increase in the relevant product and geographic markets.

64. The 2021 acquisition or combination of assets of the Philadelphia Orchestra, the Kimmel Center, and Ticket Philadelphia violated § 7 of the Clayton Act because it tended to substantially lessen competition in the relevant product and geographic markets between the Philadelphia Orchestra and the Philly POPS and enabled the Philadelphia Orchestra to achieve a monopoly position in the performance of live season Subscription Series symphony concerts at Verizon Hall and elsewhere in the Philadelphia Metropolitan Area.

65. By the aforesaid acquisition of assets and control over the Kimmel Center and Ticket Philadelphia, POKC has caused injury and damages to the Philly POPS in its business or property in that the Philly POPS—the only other Symphony Orchestra providing live symphony series concerts in competition with the Philadelphia Orchestra) has been unlawfully prevented from performing live symphony concerts at Verizon Hall and elsewhere in the relevant geographic market.

66. By the aforesaid acquisition or combination of assets, the public has been deprived of the benefits of competition in the relevant product and geographic markets.

67. The aforesaid acquisition has also enabled the Philadelphia Orchestra to monopolize and without any other competitive alternative, to substantially increase the cost to the public for attendance of live symphony series concerts in the relevant geographic market.

## COUNT TWO
### Violation of §2 of the Sherman Act by denial of access to an essential facility and by engaging in predatory conduct with the specific intent to monopolize the relevant product and geographic markets.

68. Plaintiff incorporates by reference the averments of Paragraphs 1 through 67 of this Complaint as though they were realleged at length below.

69. At the time that the Philly POPS was evicted from Verizon Hall by POKC, it was and continues to be an essential facility for the regular performance of live indoor symphony concerts in the relevant market

70. By its ownership and management of the Kimmel Center, POKC controlled the Philly POPS' access to Verizon Hall.

71. By its ownership and control of the Philadelphia Orchestra, POKC operated the only competitor to the Philly POPS for the performance of live indoor symphony concerts in the relevant product and geographic markets.

72. The Philly POPS was not practically or reasonably able to duplicate Version Hall as a facility for performing live indoor symphony concerts in the relevant product and geographic markets.

73. It was feasible for POKC to allow the Philly POPS to continue to perform live symphony concerts at Version Hall.

74. By its actions in evicting the Philly Pops from Verizon Hall, POKC caused injury and damages to the Philly POPS' business and property.

75. In addition to or in the alternative to the denial of access to an essential facility, POKC has engaged in the above series of predatory or anticompetitive conduct with the specific intent to eliminate competition between the Philadelphia Orchestra and the Philly POPS and to achieve monopoly power in the market for the regular seasonal performance of live symphony concerts in the relevant geographic market.

76. POKC's and the Philadelphia Orchestra's exclusionary and anticompetitive conduct has given POKC a dangerous probability of successfully attaining monopoly power in the relevant product and geographic markets.

77. POKC's and the Philadelphia Orchestra's anticompetitive and exclusionary conduct has injured competition and deprived customers of access to diverse product offerings and lower prices.

78. The anticompetitive effects of POCK predatory conduct far outweigh any purported procompetitive justifications.

79. Substantial barriers to entry exist in the relevant market.

80. As a direct result of POKC's exclusionary and anticompetitive conduct, the Philly POPS has suffered and continues to suffer injury to its business and property, including but not limited to lost ticket sales, revenues and public and private grants necessary for its ongoing business activities.

**COUNT THREE**
**Tortious Interference with actual or prospective business relations**

81. Plaintiff incorporates by reference the averments of Paragraphs 1 through 80 of this Complaint as though they were realleged at length below.

82. The Philly POPS had existing and prospective contractual relationships with customers and various public and private foundations for the award of grants necessary to carry on its business activities.

83. As alleged above POKC and the Philadelphia Orchestra took purposeful actions, specifically intended to harm existing and prospective relationships between the Philly POPS and their customers and contributors and to prevent new ones from forming.

84. As alleged above, POKC and the Philadelphia Orchestra unlawfully evicted the Philly POPS from an essential venue or facility, refused to deal with the Philly POPS in good faith and engaged in other activities which were intended to tortiously interfere with the Philly POPS existing and potential customers for ticket sales and actual and potential contributors.

85. The Conduct of POKC and the Philadelphia Orchestra delayed, jeopardized or otherwise interfered with the Philly POPS's performances and otherwise caused harm to the Philly POPS's reputation and goodwill.

86. POKC and the Philadelphia Orchestra purposefully interfered with contracts or prospective contractual relationships in violation of the common law of the Commonwealth of Pennsylvania.

87. The conduct of POKC's and the Philadelphia Orchestra was not privileged or justified and was intentionally undertaken to harm the Philly POPS' contractual relationships and to undermine competition between the Philly POPS and the Philadelphia Orchestra.

88. As a direct and proximate result of the alleged activities of POKC and the Philadelphia Orchestra, the Philly POPS has suffered injury to its business and properties.

## COUNT FOUR
## Unfair Competition

89. Plaintiff incorporates by reference the averments of Paragraphs 1 through 88 of this Complaint as though they were realleged at length below.

90. The Philadelphia Orchestra and the Philly POPS are direct competitors in the relevant product and geographic markets.

91. POKC and the Philadelphia Orchestra have wrongfully and intentionally injured and attempted to injure the Philly POPS' business by refusing to deal with respect to it's the Philly POPS performances of live symphony concerts at the Kimmel Center, evicting the Philly POPS from the Kimmel Center, interfering with the Philly POPS ticket sales by Ticket Philadelphia, and tortiously interfering with the Philly POPS actual and prospective contractual relationships with its ticket holders and contributors.

92. The conduct of POKC and the Philadelphia Orchestra is without privilege or justification in that, through their actions, POKC and the Philadelphia Orchestra intended to create or continue an illegal restraint of competition.

93. The improper business practices of POKC and the Philadelphia Orchestra have harmed, and threaten to further harm, the Philly POPS by stifling competition and interfering with Philly POPS' actual and prospective business relationships and goodwill.

94. The actions of POKC and the Philadelphia Orchestra have been willful and wanton and have been carried out with a specific intent to injure Philly POPS in the conduct of its business, and to gain an unfair competitive advantage over the Philly POPS.

95. The acts and conduct of POKC and the other Defendants constitute unfair competition in violation of the Common law of the Commonwealth of Pennsylvania and are contrary to same.

96. As a direct result of POKC's unlawful conduct, the Philly POPS has suffered and continues to suffer injury to its business and property, including but not limited to lost ticket sales, and the loss or delay of revenues from public and private donors or contributions.

**WHEREFOR**, Plaintiff, the Philly POPS, request the Court to:

(a) Enter an Order requiring POKC to divest itself of assets of the Philadelphia Orchestra and the Regional Performing Arts Center, doing business as Ticket Philadelphia.

(b) Enter a Preliminary and Permanent Injunction against Defendants precluding denial of access to Verzion Hall by Plaintiff on reasonable terms and conditions.

(c) Enter a Preliminary and Permanent Injunctions precluding predatory business conduct directed toward Plaintiff by the Defendants.

(d) Enter Judgment against the Defendants jointly and severally, awarding three-fold the amount of the injury and damages incurred by Plaintiff caused by Defendant's unlawful conduct in violation of the antitrust laws and for the reasonable costs and expenses incurred by Plaintiff in the prosecution of the antitrust claims including reasonable attorney's fees.

(e) Enter judgment against the Defendants jointly and severally in the amount of damages caused by their tortious conduct in violation of the common laws of the Commonwealth of Pennsylvania.

(f) Such other and further relief from the injury incurred by Plaintiff as a result of the Defendants' unlawful and actional conduct under the common laws of the Commonwealth of Pennsylvania.

### VI.   JURY DEMAND

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES AND CLAIMS FOR RELIEF SO TRIABLE**

/s/ *William A. DeStefano*
William A. DeStefano
Terri A. Pawelski
**SAXTON & STUMP**
123 South Broad Street, 28th Floor
Philadelphia, PA  19102

*Counsel for Encore Series, Inc. d/b/a The Philly POPS*

## VERIFICATION

I, Karen Corbin, am the President and Chief Executive Officer of Encore Series, Inc. d/b/a The Philly POPS and was the Chief Operating Office of the Philly POPS during the time period relevant to the allegations of the foregoing Complaint and have personal knowledge of the facts alleged in the Complaint.  I hereby verify that the facts alleged in the foregoing complaint are true and correct to the best of my knowledge, information, and belief.

*/s/ Karen Corbin*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May, 2023, a true and correct copy of the foregoing First Amended Complaint was served on all counsel appearing of record in this case, by means of the Eastern District of Pennsylvania's ECF filing and service system.

/s/*William A. DeStefano*